# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARCUS MANDELLE KELLEY,

      Petitioner,          Civil No. 2:18-CV-11161
                           HONORABLE DENISE PAGE HOOD
v.                        CHIEF UNITED STATES DISTRICT JUDGE

DEWAYNE BURTON,[1]

      Respondent.

_____/

## OPINION AND ORDER GRANTING THE
## PETITION FOR A WRIT OF HABEAS CORPUS

Marcus Mandelle Kelley, ("Petitioner"), confined at the Richard A.
Handlon Correctional Facility in Ionia, Michigan, filed a petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254, through his attorney Phillip
D. Comorski, challenging his convictions for two counts of delivery of 50
grams or more, but less than 450 grams, of cocaine, M.C.L. § 333.7401(2)
(a)(iii ), two counts of delivery of less than 50 grams of cocaine, M.C.L. §
333.7401(2)(a)(iv ), and one count of conspiracy to deliver 50 grams or
more, but less than 450 grams, of cocaine, M.C.L. § 750.157a; M.C.L. §

---

[1] The Court amends the caption to reflect the current warden of
petitioner's incarceration.

1

333.7401(2)(a)(iii ).  He was sentenced, as a fourth habitual offender, M.C.L. § 769.12, to 9 to 40 years' imprisonment for each count.  For the reasons that follow, the petition for a writ of habeas corpus is GRANTED.

## I. Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from defendant's having sold crack cocaine to a police informant on four occasions from January 26, 2011, to February 3, 2011.

*People v. Kelley*, No. 310325, 2013 WL 5763056, at *1 (Mich. Ct. App. Oct. 24, 2013).

Petitioner's conviction was affirmed on appeal. *Id.*, *lv. den.* 495 Mich. 950, 843 N.W.2d 516 (2014); *reconsideration den.* 497 Mich. 857, 852 N.W.2d 160 (2014).

Petitioner then filed a post-conviction motion for relief from judgment with the trial court, pursuant to M.C.R. 6.500, *et. seq.,* which was denied. *People v. Kelley,* No. 11-236105-FH (Oakland County Circuit Court, Jan. 5, 2016); *reconsideration den.* No. 11-236105-FH (Oakland County Circuit

2

Court, Feb. 2, 2016). The Michigan appellate courts denied petitioner leave to appeal. *People v. Kelley,* No. 334239 (Mich. Ct. App. Dec. 21, 2016); *lv. den.* 501 Mich. 924, 903 N.W.2d 563 (2017); *reconsideration den.* 501 Mich. 1041, 908 N.W.2d 895 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.   There was insufficient evidence to establish that petitioner's identity as the perpetrator of the crime.

II.  Petitioner was denied effective assistance of counsel, where counsel failed to object to detective Mark Ferguson's hearsay testimony regarding alleged narcotic transactions that were recorded with hidden recording devices, failed to call a potentially exculpatory witness, failed to introduce evidence that the license plate on the car petitioner was observed driving was a different make and model and was registered to an out-of-state owner, and failed to assert petitioner's right to a speedy trial.

III. Petitioner was denied due process of law where the prosecutor engaged in prosecutorial misconduct at trial.

IV.  Petitioner was denied due process of law where newly discovered evidence indicated that the prosecutor used perjured testimony at trial, proof of this false testimony was not available prior to petitioner's trial.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

### III.  Discussion

The Court discusses petitioner's fourth claim, because this is the

claim upon which the Court grants relief.  Petitioner alleges that his due process rights were violated by the prosecutor's use of perjured testimony, which was not discoverable prior to trial.

Petitioner claims that the prosecutor or the police violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 153 (1972) by withholding or failing to disclose that the officer in charge of the case, Detective Mark Ferguson, lied in a prior drug matter and was being investigated by the Oakland County Sheriff's department. Detective Ferguson was being investigated, but was not fired for his perjury and misconduct until after petitioner's trial.  After the detective had been discharged, the Oakland County Prosecutor dismissed sixteen cases involving Detective Ferguson.  The record reflects that Mark Ferguson also withheld information pertaining to the background of his confidential informant.  It is petitioner's contention that this evidence of corruption on the part of Detective Mark Ferguson in the performance of his duties would have affected the credibility of the prosecution witnesses and undermine confidence in the verdict.  The Court grants relief on this claim.

Petitioner's trial began on February 6, 2012, and continued on

February 7, 2012, when testimony was provided by the three (3) prosecution witnesses, ending with closing arguments and the verdict presented by the jury.

Michael Zion, the informant, testified that he contacted Detective Mark Ferguson in early January 2011, to try to obtain leniency involving a pending retail fraud charge, in exchange for providing information regarding drug trafficking in the City of Pontiac, Michigan. (T. 2/7/2012, pp. 28-29). Zion, however, informed Ferguson that he only knew one individual named "Marc," from whom he could buy drugs. (*Id.* at 49). Zion further testified that he did not use drugs when he contacted Ferguson and did not use drugs prior to picking up the retail fraud charge. (*Id.*). The record reflects that Zion had a phone number for "Marc," without explanation as to how it was obtained. Zion testified that he contacted "Marc" a few times after he spoke with Ferguson, but before the first controlled buy. The remainder of Zion's testimony pertains to the details of each of the controlled drug transactions.

Detective Mark Ferguson testified that he was contacted by Michael Zion at his office in Pontiac, in the early part of January 2011. (*Id.* pp. 82-83, 102). He did not make a determination if Zion was a user or if he

could sell drugs on the street. (*Id.* at 102). However, Ferguson did conduct a background check. (*Id.* at 102-103). The remainder of Ferguson's testimony, as follows, is consistent with Zion's.

Ferguson testified that the first controlled buy occurred on January 26, 2011, at a BP gas station, where Zion was wired, searched, and given money to purchase $ 300.00 worth of cocaine. (*Id.,* pp. 83-87). Ferguson also testified that "I told other officers, undercover officers where the deal was going to take place, they -- they usually go in front of me, before me, set up in the area to get a good eye on us going in." (*Id.,* p. 85).

All subsequent buys occurred at the 456 Montana address.

The second controlled buy took place the following day on January 27, 2011. Zion was wired, searched, and provided with $ 600.00 to purchase cocaine. (*Id.*, pp. 89-91). Ferguson testified, "I met up with Mr. Zion prior to, the deal was already set up, through him and Mr. Kelley to purchase cocaine, I then instructed other officers to go in the area of Montana Street, I searched Mr. Zion, searched his vehicle, gave him the recording device, a live recording device." (*Id.*, p. 90).

On the third controlled buy, which took place on January 28, 2011, Zion was again wired, searched, and provided this time with $ 2400.00.

(*Id.* at 84-91).  Ferguson also testified that he sent other undercover officers to the 456 Montana address prior to the third controlled buy. (*Id.* at 92).  Ferguson testified that at some point "[Zion] exited, got back in his vehicle, he then called me on the phone, stated Mr. Kelley told him to go around the corner to the store to get some razor blades." (*Id.*).

The fourth controlled buy occurred on February 3, 2011.  Ferguson testified that he doubled the $ 2400.00 amount, but then decreased his request when Marc started acting "weird." (*Id.* at 95).  Ferguson also testified that he had debriefed his officers because he had intended to arrest petitioner following this drug buy.  It was during this drug buy that Zion was thrown against a wall and searched.  It was also during the fourth drug buy that Zion exited the front of the house to go to the store to buy cigarettes (*Id.* at 96-97, 115).

In summary, Ferguson testified that he obtained 120 grams of cocaine from the four (4) controlled buys, by providing approximately $ 5000,00 in funds during the controlled buys.  Ferguson further testified that this, in his experience, was a large amount of cocaine and was not for personal use. (*Id.* 99).  Based on the amount of cocaine, Ferguson classified petitioner as "a mid-level drug dealer."

The prosecution called Rachel Topacio as their third and final witness. Ms. Topacio testified that she is "a forensic chemist, with the Oakland County Sheriff's Office, in the forensic lab." (*Id.* at 119). Topacio testified that she tested each of the four substances and the results of each tested substance contained the presence of cocaine. (*Id.* at 124-128). No other witnesses were called at petitioner's trial.

Following the trial, and before sentencing, petitioner filed a motion for a new trial. Among his claims, he alleged that trial counsel was ineffective for not contacting and calling the ex-girlfriend of the informant Michael Zion. The record references a letter sent by Zion's former girlfriend to petitioner a few days before trial, asking for petitioner's help in a matter pending in another court. She is also the mother of Zion's child. The girlfriend indicated in her letter that although she does not know petitioner, she wanted to express her sympathy as to his situation. She wrote that Zion "turned into a snitch 3 years ago to get off a felony, and possession charge," and indicated that Zion was a crack user. ECF 5-5 PgID.430, 5-8 PgID.751-752,. Defense counsel informed the court that petitioner provided the letter to his trial counsel, but counsel failed to file any witness list before trial. ECF 5-5 PgID.431.

The trial court judge denied the motion for a new trial finding that the evidence against petitioner was substantial and there was not a reasonable probability that absent trial counsel's errors, the outcome of the trial would have been different. *Id.* at 434-435.

Petitioner filed a motion for relief from judgment on February 17, 2015, with several attachments, alleging that appellate counsel was ineffective by refusing to raise the issue that Detective Mark Ferguson provided false testimony at his trial. ECF 5-9, PgId.916.

The trial court judge rejected his claim finding that "appellate counsel opined that Officer Ferguson's [firing by the Oakland County Sheriff's Department] would not benefit defendant because defendant's case was based largely on a confidential informant's testimony that he purchased drugs from defendant and was not based exclusively on Officer Ferguson's testimony." *People v. Ferguson,* 11-236105-FH, Slip. Op. at *2-3 (Oakland County Circuit Court Jan. 5, 2016). The trial court then found that "there was sufficient evidence to convict defendant even without Officer Ferguson's testimony and defendant has not shown any false testimony by Officer Ferguson, defendant has not shown that he was prejudiced by appellate counsel's failure to raise the credibility issue on

appeal." (*Id.* at 3).  The trial judge did not expressly adjudicate petitioner's underlying claim involving the newly discovered impeachment evidence involving Detective Ferguson's discharge from employment and the subsequent dismissal of sixteen of his cases by the Oakland County Prosecutor.

In his habeas petition, petitioner provided a detailed account in support of his claim that the prosecution used perjured testimony from Ferguson to convict him of the underlying charges. (ECF 1, PgID.39-42).

Respondent concedes that "In January 2013, Det. Ferguson was fired from the Oakland County Sheriff's Department for lying at a preliminary examination (not Kelley's preliminary examination) about opening a package of marijuana before obtaining a search warrant.  After he was fired, the Oakland County Prosecutor's Office reviewed 100 cases Ferguson had been involved with, including Kelley's case.  In 16 of those cases (not including Kelley's case) the prosecutor found that there was not evidence independent of Ferguson's testimony to support the charges, and the prosecutor voluntarily dismissed those cases.  In the rest of the cases, the charges were not dismissed—Kelley's case in particular was not dismissed because Michael Zion's testimony supported the charges."

(Respondent's Answer, ECF 4, PgID.82-83).

Petitioner contends that his newly discovered evidence only came to light at the time petitioner sent his court-appointed lawyer a letter on January 31, 2013, which indicated that Detective Ferguson had been investigated and fired for falsifying evidence. His court-appointed appellate counsel informed petitioner that he did not intend to take any action regarding the development with Ferguson and told petitioner that he was free to act on his own behalf to seek a remedy. Petitioner, was only able to fully develop this claim in his post-conviction motion for relief from judgement.

Respondent contends that petitioner's fourth claim is procedurally defaulted, because the trial judge ruled that petitioner failed to show good cause and prejudice for not raising this claim on his direct appeal, as required by M.C.R. 6.508(D)(3).

Petitioner filed a Standard 4 Brief on his appeal of right claiming that Ferguson provided false testimony, but was unaware of the specific misconduct that would support his claim. The supporting evidence of Detective Ferguson's testimony was not available until after petitioner filed his appeal of right. Petitioner's appellate counsel filed an appeal brief

12

containing one (1) claim pertaining to the sufficiency of the evidence. Petitioner filed a Standard 4 Brief containing the following four (4) issues: trial counsel's failure to object to the prosecutor referencing the audio recordings, trial counsel's failure to investigate and call a potential witness [Zion's former girlfriend], trial counsel's lack of communication, and the misconduct of the chief investigating officer compounded by the prosecutor's misconduct. In his brief, petitioner argued that "[A] review of the entire record in the instant case supports facts that the prosecution witnesses were not truthful about Michael Zion's informant status; that the record clearly shows a significant amount of missing evidence which suggests that Michael Zion was indeed a paid informant contrary to what is stated on the record." (Standard 4 Brief, p. 16, ECF 5-7, PgID.570).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

Petitioner claims that his appellate counsel was ineffective for failing

13

to raise his *Brady/Giglio* claim on his appeal of right. If petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his fourth claim on his direct appeal in the state courts. *See Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). Additionally, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, the Court must consider the merits of petitioner's underlying claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so

doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).

In assessing whether a claim of ineffective assistance satisfies the "cause" requirement of *Coleman*, a less stringent standard of review is applied than when reviewing an independent freestanding ineffective assistance of counsel claim pursuant to the deferential standard of review found in 28 U.S.C. § 2254(d). The question for the federal habeas court is not whether the state court's decision was unreasonable, but whether there was an independent Sixth Amendment violation under *Strickland*. Stated differently, the level of scrutiny is the same as would be applied on direct review. *See Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). As will be stated below, this Court concludes that petitioner's *Brady/Giglio*

claim was meritorious; thus, appellate counsel was ineffective for failing to raise this claim on petitioner's direct appeal, so as to provide petitioner cause and prejudice for failing to raise his fourth claim on direct appeal. *See McFarland v. Yukins,* 356 F. 3d 688, 712 (6th Cir. 2004).

As a threshold matter, this Court must determine whether Petitioner's *Brady/Giglio* claim was ever "adjudicated on the merits," for purposes of the AEDPA's deferential standard of review.

Petitioner raised his newly discovered evidence claim in his post-conviction motion for relief from judgment. Although the judge did not explicitly address petitioner's *Brady/Giglio* claim, this Court notes that the state trial judge on petitioner's post-conviction review did reject petitioner's related ineffective assistance of appellate counsel claim on the merits.

> Defendant has not shown that his appellate counsel was ineffective for failing to raise the issues on appeal. The record indicates that defense counsel considered the issues, but determined that they were not likely to prevail on appeal. In a letter dated February 18, 2013, appellate counsel addressed defendant's question whether he was entitled to reversal on the basis of Officer Ferguson's firing by the Oakland County Sheriffs Department. Appellate counsel opined that Officer Ferguson's situation would not benefit defendant because defendant's case was based largely on a confidential informant's testimony that he purchased drugs from defendant and was not based exclusively on Officer Ferguson's testimony. Defendant has not shown that appellate counsel's decision not to raise issues based on Officer Ferguson's

credibility amounted to ineffective assistance of counsel.

*People v. Kelley,* No. 11-236105-FH, Slip. Op. at *2. (Oakland County Circuit Court, Jan. 5, 2016).  Petitioner's *Brady/Giglio* claim is related to petitioner's claim that appellate counsel was ineffective for failing to raise Detective Ferguson's alleged perjury and newly discovered evidence in support of this claim on direct appeal.  In two letters to appellate counsel, petitioner specifically requested that counsel raise the issues pertaining to "Brady" material and the failure of trial counsel to call Zion's girlfriend. ECF 5-9, PgID.906-911.

"If the state court addresses the petitioner's federal claim in the course of resolving a different issue, the federal claim is deemed to have been adjudicated on the merits and entitled to § 2254(d)(1) deference." *See* Federal Habeas Manual § 3:14.  In *Hodge v. Haeberlin*, 579 F.3d 627, 643 (6th Cir. 2009), the Sixth Circuit held when a state court declines to review a claim because it (or perhaps another state court) had already resolved on direct review a related issue necessary to resolving that claim, the AEDPA's deferential standard of review applies, even though "out of caution" the Sixth Circuit also reviews the issue *de novo. Id.*

Petitioner's claim that Detective Ferguson committed perjury and

that there was newly discovered evidence that could impeach Detective

Ferguson's testimony is related to the ineffective assistance of appellate

counsel claim that he raised on his post-conviction motion.  Arguably, the

rejection of this related claim by the state trial judge on post-conviction

review constitutes an adjudication of petitioner's *Brady/Giglio* claim on the

merits, although in the absence of an explicit adjudication of petitioner's

Brady/Giglio claim by any Michigan court, *de novo* review of the claim

would also appear to be the more valid approach.

It is unnecessary to determine which standard of review applies.

Assuming that petitioner's newly discovered evidence claim was

adjudicated on the merits by the state courts, the rejection of petitioner's

*Brady/Giglio*/newly discovered evidence claim was contrary to, or an

unreasonable application of, clearly established law and an unreasonable

determination of the facts.

To establish a constitutional due process claim based upon a state

court's denial of a motion for new trial based on newly discovered

evidence, a habeas petitioner must demonstrate that the trial court's denial

of his motion for a new trial was so egregious that it violated his right to a

fundamentally fair trial. *See Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir.

2009). This Court concludes, for reasons stated in greater detail below, that the judge's denial of petitioner's motion for relief from judgment based on the newly discovered evidence of Detective Ferguson's perjury violated petitioner's due process right to a fair trial.

Petitioner contends that while the jury heard testimony from the informant and lab technician, the jury never heard that Detective Ferguson committed perjury in another case, which would support petitioner's allegation that Ferguson provided false testimony at his trial. Ferguson's testimony pertaining to his relationship with the informant, Michael Zion, is also questionable, which would challenge the credibility of both of these witnesses. Petitioner submits that without Ferguson's testimony, charges could not have been filed in this case. Petitioner further claims that due to Ferguson's false representations, it is difficult to discern with confidence what was the truth and what was a lie. (Habeas Petition, ECF 1, PgID.40). Petitioner further submits that impeachment of the informant would also have undermined his convictions, being that Ferguson, Zion and the lab technician were the only witnesses called at trial.

To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material

either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).  In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  The rule in *Brady* "applies to evidence undermining witness credibility." *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016).  Evidence is "material when there is any reasonable likelihood it could have affected the judgment of the jury."  *Id.* The test is not whether the jury would have acquitted had it known about the suppressed evidence; a Due Process violation occurs if the withheld "evidence is sufficient to undermine confidence in the verdict."  *Id.* (citing *Smith v. Cain*, 565 U.S. 73 (2012)).  Under this standard, petitioner can

20

prevail on his *Brady* claim violation even if "the undisclosed information may not have affected the jury's verdict." *Id.* at 1006, n. 6.

It is Respondent's contention that petitioner's case was not dismissed, along with many other pending drug related cases, because Michael Zion's testimony supported the charges and that the prosecutor's case rested primarily on the testimony of two witnesses whose testimony corroborated each other. The Court will address the credibility issues pertaining to Detective Mark Ferguson and Michael Zion individually.

Initially, this court takes notice that it was Detective Mark Ferguson who identified petitioner at the first drug buy.

A. [Ferguson]: I identified him on the first buy, on the 26th.

Q. [prosecutor]: Okay.

A. I know Mr. Kelley from –

(T. 2/7/2012, p. 96).

Although not developed, it appears from the record that Detective Ferguson knew petitioner prior to his encounter with the informant, Michael Zion.

At the first drug buy, the record reflects that the licence plate of petitioner's car did not come back registered to petitioner.

> Q. [prosecutor] Did you run, to the best of your knowledge and recollection, did you run a LEIN on that license plate?
>
> A. [Ferguson] I did.
>
> Q. And do you recall who the license plate came back to as the owner of that vehicle?
>
> A. It did not come back to Mr. Kelley.

(*Id.* at 106).

Detective Ferguson further testified that on January 26, at the first

drug buy, that he was able to see and identify petitioner.

> Q. [prosecutor] But on some -- on one occasion, at least an occasion on that day, you were able to see and identify Mr. Kelley, Marcus, driving that particular vehicle?
>
> A. [Ferguson]: Yes.
>
> After I left Mr. Zion, I got -- I got in line with the other officers, caught up to them and started following Mr. Kelley. I got a -- I got a good eye on him in the vehicle, I knew Mr. Kelley, I knew who he was.

(*Id.* at 109).

On January 26, 2011, Detective Mark Ferguson identified petitioner.

Ferguson's trial testimony provided the identification of petitioner in order

to sustain the conviction on the first count of the indictment.

Respondent contends that petitioner's convictions can be sustained

without the testimony of Detective Mark Ferguson.  However, without the

22

identification testimony of Detective Ferguson, the prosecution could not prove the identity of petitioner to support the first drug charge. Michael Zion testified that he knew one person who sold drugs and provided a first name and phone number, but the record reflects that the initial contact between Zion and petitioner occurred on the phone after Zion's contact with Ferguson and before the first call to arrange the first drug buy. There is no testimony as to a prior relationship between petitioner and Zion. The newly discovered evidence of Ferguson's misconduct and subsequent firing from the Sheriff's department, if presented to the jury, could significantly have undermined the conviction on the first count of the indictment.

The second arranged drug buy took place on January 27, 2011. Both the second and third drug buys took place at the 456 Montana residence. The second and third drug buys were the basis of the sworn affidavit provided to the circuit court to obtain the search warrant. Here, Ferguson relies on his informant, Michael Zion, to obtain his search warrant. Zion is the second and only other witness to the drug transactions.

The affidavit for the search warrant signed by Detective Ferguson

has a number of inconsistences with the testimony he provided at trial.

The inconsistences are as follows:

Section 3 of the sworn affidavit in support of the search warrant,

based on the second and third controlled drug buy:

> 3 (D) "On both occasions the affiant observed the confidential
> informant enter, then exit the above described location within a
> short period of time and directly return to the prearranged meet
> location without stopping at any other location or having contact
> with any other person."

ECF 5-8, PgID.837.

In connection with the third drug buy, Detective Ferguson testified:

> A. [Ferguson] I set up -- again, I sent other undercover officers
> there, prior to, I followed Mr. Zion to 456 Montana, I was right
> behind him when he pulled up, again across the street from 456
> Montana, he then went inside the front door at 456 Montana.
>
> Q. [prosecutor]: Okay. At some point did Mr. Zion exit that home?
>
> A. He did.
>
> Q. Okay. What happened then?
>
> A. He exited, got back in his vehicle, he then called me on the
> phone, stated Mr. Kelley told him to go around the corner to the
> store to get some razor blades.

(*Id.*, p. 92).

The affidavit in support of the search warrant provided to the circuit

court is inconsistent with Ferguson's trial testimony. It is also inconsistent

with the section that pertains to his confidential informant.

Section 4 (D) of the sworn affidavit reads as follows:

(D) During a period of time covering over 1 year, informant has purchased narcotics and dangerous drugs over 20 times. As a result of the purchases made by the informant, five search warrants have been issued by judges of the 50th District Court.

The informant, Michael Zion, testified that he contacted Ferguson to offer information pertaining to buying drugs. He said that he could provide information on one individual who sold drugs. Zion also testified that he did not do drugs before his contact with Ferguson or thereafter. He testified that his motive for contacting Ferguson was simply to obtain leniency on a retail fraud charge.

In closing argument, the prosecution portrayed this informant as an individual looking for assistance on a shoplifting charge, stating:

Now, yes, an informant is someone who engaged and helped police not because he wanted to be a good citizen but because he wanted some help on his own shoplifting case, that's true, that does not take away from his credibility when he testified today, however.

You don't have to like an informant, you don't have to like Michael Zion to find the defendant guilty.

(T. 2/7/12, p. 139).

The prosecutor later made the following remarks:

Now, Mr. Taylor talked a lot about credibility and that's an instruction and I want you to pay particular attention to that jury instruction and I want you also to recall the demeanor Mr. Zion exhibited when he testified.

Yes, he was shaky, yes, he was nervous, he was working off a shoplifting charge and he got himself wrapped in prosecuting a mid-level drug dealer.

Ask him if he'd do it again, he'd probably say no.

Can't blame him, he probably didn't want to be here, you could tell but he was very straight forward with his answers, he didn't try to hide anything about this background.

He told us the truth to every single question that was asked of him.

(*Id.* at 158).

The testimony provided by Detective Mark Ferguson at trial, and his affidavit in support of the search warrant are inconsistent as to Zion's motive in testifying at petitioner's trial and his relationship with Detective Ferguson. Ferguson's trial testimony is further exacerbated by the comments made by the prosecutor who portrayed Zion as an individual attempting to gain leniency on a retail fraud charge. The prosecutor went so far as to say to the jury, "Ask him if he'd do it again, he'd probably say no." The signed affidavit in support of Ferguson's search warrant describes his informant as having "purchased narcotics and dangerous

drugs over 20 times.  As a result of the purchases made by the informant, five search warrants have been issued by judges of the 50th District Court."  ECF 5-8, PgID.837.  The prosecutor's comment and characterization of Zion's nervousness stemming from "he was working off a shoplifting charge and he got himself wrapped in prosecuting a mid-level drug dealer," would not be consistent with the sworn affidavit in support of the search warrant which described the informant as having experience in 20 drug buys which resulted in 5 search warrants.  When added to the newly discovered evidence of Ferguson's misconduct, this Court finds that presentation of the additional evidence would be sufficient to undermine confidence in the verdict.

Respondent contends that the testimony of the informant, Michael Zion was sufficient, without the testimony of Ferguson, to sustain the convictions.  This Court had already found that the identification evidence needed to sustain the first drug buy was provided by Detective Ferguson and without his testimony, the conviction cannot stand.  In regards to the subsequent drug buys, the credibility of the informant, Michael Zion, is questionable.

Petitioner attached to his Standard 4 Brief on his direct appeal a

letter sent from Zion's ex-girlfriend. This is the same letter referenced in petitioner's motion for a new trial. ECF 5-8, PgID.752. This letter suggests that Zion was a drug user with a long standing informant relationship with the police. This calls into question Zion's testimony that he had no prior dealings with narcotics and was simply trying to get out from under a retail fraud charge.

A review of the entire record brings into question the credibility of the informant, Michael Zion, who testified that he did not use drugs and that he simply contacted Detective Ferguson to gain leniency on a retail fraud charge. This testimony was also emphasized by the prosecution in closing argument. Due to the newly discovered evidence of Detective Mark Ferguson's perjury and firing from the Oakland County Sheriff's Department, and credibility issues in connection with the informant Michael Zion, this Court finds that had the jury been presented with evidence that Detective Ferguson had been fired from the Sheriff's Department for committing perjury and that the Oakland County Prosecutor's Office had subsequently dismissed sixteen cases in which Detective Ferguson was the officer in charge of the case, there is a great probability of a different outcome to petitioner's trial.

The fact that the Oakland County Prosecutor may have been unaware of Detective Mark Ferguson's perjury is not dispositive of whether a *Brady* violation occurred nor would it relieve other agents of the State from disclosing the evidence. *Brady's* obligation to disclose also applies to exculpatory evidence that is known only to the police, but withheld from the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *see also Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009)("*Brady* . . . applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not . . . and whether the accused asked for it or not."). "[B]ecause the police are just as much an arm of the state as the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009).

Petitioner's case is very close to that of the petitioner in *Harris*, *supra,* where the Sixth Circuit granted habeas relief because the Michigan Court of Appeals, contrary to the Supreme Court's holdings, ruled that there was no *Brady* violation because the prosecutors were not aware of the explicit and implicit promises police made to the prosecution's star

witness. *Harris,* 553 F.3d at 1033.  The Sixth Circuit held that the state's

failure to provide these statements, which could have been used to

impeach the witness, violated *Brady. Id.*  The Sixth Circuit further

concluded that the petitioner in *Harris* was prejudiced by the

nondisclosure, because the impeachable witness "was the key witness for

the prosecution." *Id.*

Detective Mark Ferguson was the key witness for the prosecution.

He was the officer in charge of the investigation and sat at the

prosecution's table throughout the trial.  Although the prosecutor may not

have known about Detective Ferguson's corruption, such knowledge can

be imputed to the prosecution because Detective Ferguson was a part of

the prosecution team.

In *Arnold v. Secretary, Department of Corrections*, 595 F.3d 1324

(11th Cir. 2010), *adopting opinion of Arnold v. McNeil*, 622 F. Supp. 2d

1294 (M.D. Fla. 2009), *aff'd and adopted*, 595 F.3d 1324 (11th Cir. 2010),

the United States Court of Appeals for the Eleventh Circuit held that

crimes committed by a police detective who was a lead investigator and

key witness against a criminal defendant, although not known by the

prosecutor until after the conclusion of petitioner's trial, was material

exculpatory information that the prosecution was obligated to disclose to the defendant under *Brady*.

More recently, in *United States v. McClellon*, 260 F. Supp. 3d 880, 883–88 (E.D. Mich. 2017), *appeal dismissed*, No. 17-1703, 2017 WL 4317149 (6th Cir. July 20, 2017), Judge David M. Lawson of this district granted a new trial to a federal defendant based on a *Giglio* violation despite the fact that the government attorney was unaware of the police officer's misconduct.  In that prosecution for being a felon in possession of a firearm, a Detroit Police officer testified that he saw the defendant toss a gun during a pursuit. *Id.* at 882.  The day after this officer testified, the Detroit Police Department suspended the officer during the course of an investigation into claims that the officer falsified police reports in weapons cases. *Id.*  The officer was subsequently criminally charged, but acquitted. This officer was not the only law-enforcement witness who testified to seeing the defendant with a gun. *Id.* at 883.  Despite the fact that the government was unaware of the investigation, *Id.* at 884, Judge Lawson found a *Giglio* violation because the officer knew of his own suspension and the pending investigation into his misconduct and that information undermining his credibility would damage the case. *Id.* at 885.

Finally, Judge Arthur J. Tarnow of this district recently granted habeas relief on a similar claim, finding that evidence that the officer in charge's corrupt activities, could be imputed to the prosecutor's office, for purposes of *Brady*, because the officer was a key part of the prosecution team who was in charge of the investigation and actually sat at the table with the prosecution at trial. *See McGowan v. Christiansen*, 353 F. Supp. 3d 662 (E.D. Mich. 2018).

Petitioner's case is identical to the petitioner's case in *McGowan.* Detective Ferguson was the officer in charge of the case and a key member of the prosecution team. Evidence that Detective Ferguson had committed perjury in another case, and that the prosecutor had dismissed a number of cases involving Detective Ferguson, could have been used to significantly impeach the detective's credibility.

The only other witness called to testify as to the drug transactions was Michael Zion. His credibility is also questionable. Having reviewed the entire record, the Court finds that the verdict can be brought into question in light of the testimony provided by both of the prosecution witnesses that testified as to the drug transactions. Although other officers were referenced by Ferguson, their existence and roles are questionable,

32

as they were not called to testify at trial.

Therefore, the Court will order the State of Michigan to either (1) set a new trial date that is within ninety days of entry of this order, which is to be conducted in accordance with the conditions stated in this opinion, or (2) release petitioner unconditionally. *See Mathis v. Berghuis,* 202 F. Supp. 2d 715, 725 (E.D. Mich. 2002).

Because this Court's conclusion that petitioner is entitled to habeas relief on his fourth claim is dispositive of the petition, the Court considers it unnecessary to review petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger,* 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005); *see also Haynes v. Burke,* 115 F. Supp. 2d 813, 819-20 (E.D. Mich. 2000).

## IV.  Conclusion

IT IS ORDERED that Petitioner Marcus Mandelle Kelley's petition for a writ of habeas corpus [Dkt. # 1] is CONDITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.

**s/Denise Page Hood**
**DENISE PAGE HOOD**
**CHIEF UNITED STATES DISTRICT JUDGE**

**Dated:** May 1, 2019