**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARCUS MANDELLE KELLEY,

     Petitioner,            Civil No. 2:18-CV-11161
                            HONORABLE DENISE PAGE HOOD
v.                         CHIEF UNITED STATES DISTRICT JUDGE

DEWAYNE BURTON,

     Respondent.
_____/

## OPINION AND ORDER ON REMAND (1) GRANTING THE MOTION TO AMEND THE PETITION FOR A WRIT OF HABEAS CORPUS AND (2) CONDITIONALLY GRANTING THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS

This case is on remand from the United States Court of Appeals for the Sixth Circuit.  Marcus Mandelle Kelley, ("Petitioner"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, through his attorney Phillip D. Comorski, challenging his convictions for two counts of delivery of 50 grams or more, but less than 450 grams, of cocaine, M.C.L. § 333.7401(2) (a)(iii), two counts of delivery of less than 50 grams of cocaine, M.C.L. § 333.7401(2)(a)(iv), and one count of conspiracy to deliver 50 grams or more, but less than 450 grams, of cocaine, M.C.L. § 750.157a;

1

M.C.L. § 333.7401(2)(a)(iii).   For the reasons that follow, the Court GRANTS petitioner's motion to amend the petition for a writ of habeas corpus. *See* ECF No. 24, PageID.1365-1369.  The amended petition for a writ of habeas corpus is GRANTED.

## I. Procedural History

Petitioner was convicted following a jury trial in the Oakland County Circuit Court.  Petitioner's conviction was affirmed on direct appeal. *People v. Kelley*, No. 310325, 2013 WL 5763056 (Mich. Ct. App. Oct. 24, 2013); *lv. den*. 495 Mich. 950, 843 N.W.2d 516 (2014); *reconsideration den*. 497 Mich. 857, 852 N.W.2d 160 (2014).

Petitioner then filed a post-conviction motion for relief from judgment with the trial court, pursuant to M.C.R. 6.500, *et. seq*., which was denied. *People v. Kelley*, No. 11-236105-FH (Oakland County Circuit Court, Jan. 5, 2016); *reconsideration den*. No. 11-236105-FH (Oakland County Circuit Court, Feb. 2, 2016).   The Michigan appellate courts denied petitioner leave to appeal. *People v. Kelley*, No. 334239 (Mich. Ct. App. Dec. 21, 2016); *lv. den*. 501 Mich. 924, 903 N.W.2d 563 (2017); *reconsideration den*. 501 Mich. 1041, 908 N.W.2d 895 (2018).

Petitioner filed a petition for a writ of habeas corpus. This Court granted the petition, finding that the prosecutor or the police violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 153 (1972) by withholding or failing to disclose that the officer in charge of the case, Detective Mark Ferguson, lied in a prior drug matter and was being investigated by the Oakland County Sheriff's Department and that appellate counsel had been ineffective for failing to raise a *Brady* claim on petitioner's appeal of right. *Kelley v. Burton*, 377 F. Supp. 3d 748 (E.D. Mich. 2019).

The Sixth Circuit reversed and remanded the case to this Court, finding that this Court erred in recasting petitioner's perjury claim as a *Brady* claim, because the original petition did not contain a *Brady* withholding claim. *Kelley v. Burton*, 792 F. App'x 396, 397 (6th Cir. 2020). Significantly, the Sixth Circuit indicated that they "express no views as to the viability of such a claim (including whether, as the state suggests, it is procedurally defaulted)." *Id.,* at 397, n. 2.

On remand, the case was reopened and the parties were ordered to file supplemental briefs.  Petitioner's counsel filed a supplemental brief which is construed in part as a motion to amend the petition to include a

3

*Brady* claim. (ECF No. 24).    Respondent filed a response to the supplemental brief. (ECF No. 25).

## II. Discussion

### A. The amended petition was timely filed.  The motion to amend is GRANTED.

Petitioner filed a supplemental brief, in which he specifically argues that the prosecutor or the police violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) by withholding or failing to disclose that Detective Mark Ferguson lied in a prior drug matter and was being investigated by the Oakland County Sheriff's Department and that appellate counsel had been ineffective for failing to raise a *Brady* claim on the appeal of right.   He requests to file an amendment to the original petition.

Respondent objects to the amendment of the petition.   Respondent acknowledges that petitioner's original habeas petition, including the perjury claim contained in the original petition, was filed in compliance with the one year statute of limitations for filing habeas petitions, but argues that the amended petition should be denied because petitioner's counsel filed the amended petition after the one year period for filing habeas petitions elapsed.

4

In the statute of limitations context, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. New York*, 186 F.3d 243, 250 (2d Cir.1999); *see also Cooey v. Strickland,* 479 F.3d 412, 415-16 (6th Cir. 2007).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one (1) year statute of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a state court.  The one year statute of limitation shall run from the latest of:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

5

The parties all agree that the original habeas petition, which included a claim that petitioner was denied Due Process when Detective Ferguson committed perjury by failing to disclose that he was the subject of an ongoing investigation in that he had lied in a prior drug matter, was filed in compliance with the one year limitations period. Petitioner argues that his new *Brady* claim and the related ineffective assistance of appellate counsel claim should relate back to the original timely filed habeas petition. Respondent disagrees.

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Petitioner's *Brady* claim alleges that the prosecutor or the police withheld information that Detective Ferguson was under investigation by the Oakland County Sheriff's Department for lying in a prior drug case and that appellate counsel was ineffective for failing to raise this claim on the appeal of right. Petitioner's *Brady* claim shares a "common core of operative facts" with his perjury claim that he raised in his earlier petition

6

and the related ineffective assistance of appellate counsel claim that he raised in that petition.  The Court believes that petitioner's amended claim relates back to his earlier perjury claim "because, in the language of Rule 15(c), it clarified or amplified a claim alleged in the original petition. That is, the amended [*Brady*] claim….arose out of the same set of operative facts as the original [perjury] claim. *Hill v. Mitchell*, 842 F.3d 910, 924 (6th Cir. 2016)(citing *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001)).

This Court permits petitioner to amend his petition because his *Brady* claim and the related ineffective assistance of appellate counsel claim relate back to the timely filed perjury claim. Petitioner's proposed amended habeas petition should also be granted because it advances a new claim that may have arguable merit. *See e.g. Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016).

## B. Petitioner's *Brady* claim was properly exhausted with the state courts.

Respondent argues that petitioner's *Brady* claim, even if timely, was never exhausted with the state courts and is now procedurally defaulted because pursuant to M.C.R. 6.502(G), petitioner is prohibited from bringing a second post-conviction motion for relief from judgment to exhaust such a claim.

7

If a habeas petitioner fails to present his claims to the state courts and is now barred from pursuing relief there, the petition should not be dismissed for lack of exhaustion because there are simply no remedies available for the petitioner to exhaust.  However, the petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995).

A state prisoner who seeks federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c). *See Picard v. Connor*, 404 U. S. 270, 275-78 (1971).  Although exhaustion is not a jurisdictional matter, "it is a threshold question that must be resolved" before a federal court can reach the merits of any claim contained in a habeas petition. *See Wagner v. Smith,* 581 F.3d 410, 415 (6th Cir. 2009).  Therefore, each claim must be reviewed by a federal court for exhaustion before any claim may be reviewed on the merits by a federal court. *Id.*

A claim may be considered "fairly presented" only if the petitioner asserted both the factual and legal basis for his claim in the state courts.

8

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The doctrine of exhaustion mandates that the same claim under the same theory be presented to the state courts before it can be raised in a federal habeas petition. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

As with the timeliness issue, there is no dispute that petitioner raised on post-conviction review a claim that the police or prosecutor violated *Giglio v. United States*, 405 U.S. 150, 153 (1972) by introducing perjured testimony and failing to correct that perjured testimony by withholding or failing to disclose the information that Detective Ferguson lied in a prior drug case, and that he was under investigation. Respondent argues, however, that the *Brady* claim was never raised on post-conviction review.

As alluded to by the Court in the statute of limitations section, *supra,* claims arising under *Brady v. Maryland, supra,* and *Giglio v. United States* and the earlier Supreme Court case of *Napue v. Illinois*, 360 U.S. 264 (1959), which *Giglio* is based on, involve a similar constitutional violation, namely, the failure by the police or prosecutor to disclose information that could be favorable to the defendant, either because it is exculpatory, impeachment evidence, or a disclosure that a prosecutor witness committed perjury. The Supreme Court, in fact, has left open the question

9

whether *Brady* and *Napue* claims must be separately pleaded and exhausted for habeas purposes. *See Banks v. Dretke*, 540 U.S. 668, 690, n. 11 (2004).  At least one judge in another district court in the Sixth Circuit has held that a habeas petitioner fairly presented his *Brady* claim to the Tennessee courts by arguing that the prosecution had a "sweetheart" deal with a witness that would have impacted assessment of the witness's credibility, which the prosecutor intentionally hid, and characterized the prosecutor's behavior as posing "considerable due process problems under *Giglio v. United States*." *Duncan v. Carpenter*, No. 3:88-00992, 2014 WL 3905440, at *23 (M.D. Tenn. Aug. 11, 2014).

Petitioner in his post-conviction motion for relief from judgment as part of his ineffective assistance of appellate counsel claim indicated that he had written his appellate attorney after stories about Detective Ferguson's misconduct had been released in the media and asked his appellate counsel to file a supplemental brief regarding police and prosecutorial misconduct.  Appellate counsel refused to do so.  Petitioner argued that appellate counsel was ineffective for failing to raise this claim in a supplemental brief. (ECF No. 5-9, PageID.889-90).  Petitioner then argued that the prosecutor committed misconduct by using perjured

10

testimony and cited to the cases of *Mooney v. Holohan,* 294 U.S. 103 (1935), *Pyle v. Kansas,* 317 U.S. 213 (1942) and *Napue v. Illinois,* 360 U.S. 264 (1959)(*Id.,* PageID.890).   Petitioner's post-conviction motion then quoted the Supreme Court case of *United States v. Agurs,* 427 U.S. 97 (1976) and said that a conviction obtained through perjured testimony "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." (Petitioner's post-conviction motion, *quoting Agurs,* 427 U.S. at 103)(*Id.,* PageID.890-91).

Petitioner later argued in his post-conviction motion that he was entitled to a new trial based on the newly discovered evidence that Detective Ferguson had lied in another case. (*Id.,* PageID.892-93). Petitioner argued that this new evidence was material and would have led to his acquittal.  Petitioner in his post-conviction motion argued that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.  Petitioner cited to *United States v. Agurs*, 427 U.S. 97 (1976) for this proposition. (*Id.,* PageID.893). Petitioner then argued that the evidence of Detective Ferguson's lying could have impeached his credibility and lead to a different verdict. (*Id.,* PageID.894-95).

11

In the brief on appeal, petitioner's post-conviction counsel cited to the Sixth Circuit case of *Mathis v. Berghuis,* 90 F. App'x 101 (6th Cir. 2004), for the proposition that petitioner was entitled to a new trial based on this newly discovered impeachment evidence. (ECF No. 5-14, PageID.1140). The Sixth Circuit in *Mathis* cited to and relied on *Brady v. Maryland, supra,* in holding that a habeas petitioner was entitled to habeas relief when the prosecutor failed to turn over a police report which could have been used to impeach a witness. *Mathis,* 90 F. App'x at 105-07. Petitioner's counsel later argued that "the newly discovered evidence is exculpatory, non-cumulative, and would produce a different result because Detective Ferguson's testimony was the only credible evidence implicating Mr. Kelley." Petitioner's counsel later argued that petitioner had good cause to excuse his failure to raise this claim on his direct appeal because information concerning Detective Ferguson had been withheld from petitioner until after his trial was over. (*Id.,* PageID.1141, 1143). Petitioner's counsel made the same arguments before the Michigan Supreme Court. (ECF No. 5-15, PageID.1215-16, PageID.1218).

The exhaustion requirement requires that a federal habeas petitioner fairly present the substance of each federal constitutional claim to state

12

courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993).

Petitioner cited to *United States v. Agurs* and its materiality standard in his initial post-conviction motion. *United States v. Agurs* is considered "a key case in the progeny of *Brady v. Maryland* [,]." *Conner v. Dir. of Div. of Adult Corr., Iowa*, 870 F.2d 1384, 1388 (8th Cir. 1989). Petitioner's citation to *Agurs* in his post-conviction motion was sufficient to fairly present his *Brady* claim, for purposes of exhausting it for habeas review. *See e.g. Bridges v. Beard,* 941 F. Supp. 2d 584, 623 (E.D. Pa. 2013), *as amended* (May 1, 2013), *aff'd sub nom. Bridges v. Sec'y of Pennsylvania Dep't of Corr.*, 706 F. App'x 75 (3d Cir. 2017)(petitioner sufficiently alerted state courts to the nature of his *Brady* claim by citing in his appellate briefs to a state case which in turn cited to *Agurs*); *Romer v. Keane*, No. 94 CIV. 4980 (PKL), 1995 WL 758727, at *5 (S.D.N.Y. Dec. 22, 1995)(petitioner sufficiently exhausted *Brady* claim by citing in his state appellate brief to *Agurs* and *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Petitioner cited to the Sixth Circuit's *Mathis* case in his post-conviction appeal, which

13

specifically mentioned *Brady* and used that case as the basis to grant habeas relief. Petitioner in his post-conviction pleadings also mentioned that the evidence that Detective Ferguson had lied, which was withheld from him, would be exculpatory and would lead to a different result on retrial. This argument was sufficient to exhaust petitioner's *Brady* claim on post-conviction review of his claim. This Court also believes that petitioner's arguments sufficiently exhausted his related claim that appellate counsel was ineffective for refusing to raise a *Brady* claim on petitioner's appeal of right. The Court rejects respondent's argument.

**C. The merits of the case.**

**1. Pertinent facts.**

This Court recites verbatim the relevant facts from its original opinion and order granting habeas relief:

> Petitioner's trial began on February 6, 2012, and continued on February 7, 2012, when testimony was provided by the three (3) prosecution witnesses, ending with closing arguments and the verdict presented by the jury.
>
> Michael Zion, the informant, testified that he contacted Detective Mark Ferguson in early January 2011, to try to obtain leniency involving a pending retail fraud charge, in exchange for providing information regarding drug trafficking in the City of Pontiac, Michigan. (T. 2/7/2012, pp. 28-29). Zion, however, informed Ferguson that he only knew one individual named "Marc," from whom he could buy drugs. (*Id.* at 49). Zion further

14

testified that he did not use drugs when he contacted Ferguson and did not use drugs prior to picking up the retail fraud charge. (*Id.*). The record reflects that Zion had a phone number for "Marc," without explanation as to how it was obtained. Zion testified that he contacted "Marc" a few times after he spoke with Ferguson, but before the first controlled buy. The remainder of Zion's testimony pertains to the details of each of the controlled drug transactions.

Detective Mark Ferguson testified that he was contacted by Michael Zion at his office in Pontiac, in the early part of January 2011. (*Id.* pp. 82-83, 102). He did not make a determination if Zion was a user or if he could sell drugs on the street. (*Id.* at 102). However, Ferguson did conduct a background check. (*Id.* at 102-103). The remainder of Ferguson's testimony, as follows, is consistent with Zion's.

Ferguson testified that the first controlled buy occurred on January 26, 2011, at a BP gas station, where Zion was wired, searched, and given money to purchase $ 300.00 worth of cocaine. (*Id.*, pp. 83-87). Ferguson also testified that "I told other officers, undercover officers where the deal was going to take place, they -- they usually go in front of me, before me, set up in the area to get a good eye on us going in." (*Id.*, p. 85).

All subsequent buys occurred at the 456 Montana address.

The second controlled buy took place the following day on January 27, 2011. Zion was wired, searched, and provided with $ 600.00 to purchase cocaine. (*Id.*, pp. 89-91). Ferguson testified, "I met up with Mr. Zion prior to, the deal was already set up, through him and Mr. Kelley to purchase cocaine, I then instructed other officers to go in the area of Montana Street, I searched Mr. Zion, searched his vehicle, gave him the recording device, a live recording device." (*Id.*, p. 90).

On the third controlled buy, which took place on January 28, 2011, Zion was again wired, searched, and provided this time

15

with $ 2400.00. (*Id.* at 84-91). Ferguson also testified that he sent other undercover officers to the 456 Montana address prior to the third controlled buy. (*Id.* at 92). Ferguson testified that at some point "[Zion] exited, got back in his vehicle, he then called me on the phone, stated Mr. Kelley told him to go around the corner to the store to get some razor blades." (*Id.*).

The fourth controlled buy occurred on February 3, 2011. Ferguson testified that he doubled the $ 2400.00 amount, but then decreased his request when Marc started acting "weird." (*Id.* at 95). Ferguson also testified that he had debriefed his officers because he had intended to arrest petitioner following this drug buy. It was during this drug buy that Zion was thrown against a wall and searched. It was also during the fourth drug buy that Zion exited the front of the house to go to the store to buy cigarettes (*Id*. at 96-97, 115).

In summary, Ferguson testified that he obtained 120 grams of cocaine from the four (4) controlled buys, by providing approximately $ 5000.00 in funds during the controlled buys. Ferguson further testified that this, in his experience, was a large amount of cocaine and was not for personal use. (*Id*. 99). Based on the amount of cocaine, Ferguson classified petitioner as "a mid-level drug dealer."

The prosecution called Rachel Topacio as their third and final witness. Ms. Topacio testified that she is "a forensic chemist, with the Oakland County Sheriff's Office, in the forensic lab." (*Id.* at 119). Topacio testified that she tested each of the four substances and the results of each tested substance contained the presence of cocaine. (*Id.* at 124-128). No other witnesses were called at petitioner's trial.

Following the trial, and before sentencing, petitioner filed a motion for a new trial. Among his claims, he alleged that trial counsel was ineffective for not contacting and calling the ex-girlfriend of the informant Michael Zion. The record references a letter sent by Zion's former girlfriend to petitioner a few days

16

before trial, asking for petitioner's help in a matter pending in another court. She is also the mother of Zion's child. The girlfriend indicated in her letter that although she does not know petitioner, she wanted to express her sympathy as to his situation. She wrote that Zion "turned into a snitch 3 years ago to get off a felony, and possession charge," and indicated that Zion was a crack user. ECF 5-5 PgID.430, 5-8 PgID.751-752,. Defense counsel informed the court that petitioner provided the letter to his trial counsel, but counsel failed to file any witness list before trial. ECF 5-5 PgID.431.

The trial court judge denied the motion for a new trial finding that the evidence against petitioner was substantial and there was not a reasonable probability that absent trial counsel's errors, the outcome of the trial would have been different. Id. at 434-435.

Petitioner filed a motion for relief from judgment on February 17, 2015, with several attachments, alleging that appellate counsel was ineffective by refusing to raise the issue that Detective Mark Ferguson provided false testimony at his trial. ECF 5-9, PgId.916.

The trial court judge rejected his claim finding that "appellate counsel opined that Officer Ferguson's [firing by the Oakland County Sheriff's Department] would not benefit defendant because defendant's case was based largely on a confidential informant's testimony that he purchased drugs from defendant and was not based exclusively on Officer Ferguson's testimony." *People v. Ferguson*, 11-236105-FH, Slip. Op. at *2-3 (Oakland County Circuit Court Jan. 5, 2016). The trial court then found that "there was sufficient evidence to convict defendant even without Officer Ferguson's testimony and defendant has not shown any false testimony by Officer Ferguson, defendant has not shown that he was prejudiced by appellate counsel's failure to raise the credibility issue on appeal." (*Id.* at 3). The trial judge did not expressly adjudicate petitioner's underlying claim involving the newly discovered

17

impeachment evidence involving Detective Ferguson's discharge from employment and the subsequent dismissal of sixteen of his cases by the Oakland County Prosecutor.

In his [original] habeas petition, petitioner provided a detailed account in support of his claim that the prosecution used perjured testimony from Ferguson to convict him of the underlying charges. (ECF 1, PgID.39-42).

Respondent concedes that "In January 2013, Det. Ferguson was fired from the Oakland County Sheriff's Department for lying at a preliminary examination (not Kelley's preliminary examination) about opening a package of marijuana before obtaining a search warrant. After he was fired, the Oakland County Prosecutor's Office reviewed 100 cases Ferguson had been involved with, including Kelley's case. In 16 of those cases (not including Kelley's case) the prosecutor found that there was no evidence independent of Ferguson's testimony to support the charges, and the prosecutor voluntarily dismissed those cases. In the rest of the cases, the charges were not dismissed—Kelley's case in particular was not dismissed because Michael Zion's testimony supported the charges." (Respondent's Answer, ECF 4, PgID.82-83).

Petitioner contends that his newly discovered evidence only came to light at the time petitioner sent his court-appointed lawyer a letter on January 31, 2013, which indicated that Detective Ferguson had been investigated and fired for falsifying evidence. His court-appointed appellate counsel informed petitioner that he did not intend to take any action regarding the development with Ferguson and told petitioner that he was free to act on his own behalf to seek a remedy. Petitioner, was only able to fully develop this claim in his post-conviction motion for relief from judgement.

*Kelley v. Burton*, 377 F. Supp. 3d 748, 752–54.

18

**2. Standard of Review**

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

19

This Court must first determine whether the AEDPA's deferential standard of review applies or whether to apply a *de novo* standard of review. This Court addressed this issue in its original opinion and order granting habeas relief:

> As a threshold matter, this Court must determine whether Petitioner's *Brady/Giglio* claim was ever "adjudicated on the merits," for purposes of the AEDPA's deferential standard of review.

> Petitioner raised his newly discovered evidence claim in his post-conviction motion for relief from judgment. Although the judge did not explicitly address petitioner's *Brady/Giglio* claim, this Court notes that the state trial judge on petitioner's post-conviction review did reject petitioner's related ineffective assistance of appellate counsel claim on the merits.

> > Defendant has not shown that his appellate counsel was ineffective for failing to raise the issues on appeal. The record indicates that defense counsel considered the issues, but determined that they were not likely to prevail on appeal. In a letter dated February 18, 2013, appellate counsel addressed defendant's question whether he was entitled to reversal on the basis of Officer Ferguson's firing by the Oakland County Sheriffs [sic] Department. Appellate counsel opined that Officer Ferguson's situation would not benefit defendant because defendant's case was based largely on a confidential informant's testimony that he purchased drugs from defendant and was not based exclusively on Officer Ferguson's testimony. Defendant has not shown that appellate counsel's decision not to raise issues based on Officer

20

Ferguson's credibility amounted to ineffective assistance of counsel.

*People v. Kelley*, No. 11-236105-FH, Slip. Op. at *2. (Oakland County Circuit Court, Jan. 5, 2016).

Petitioner's *Brady/Giglio* claim is related to petitioner's claim that appellate counsel was ineffective for failing to raise Detective Ferguson's alleged perjury and newly discovered evidence in support of this claim on direct appeal. In two letters to appellate counsel, petitioner specifically requested that counsel raise the issues pertaining to "Brady" material and the failure of trial counsel to call Zion's girlfriend. ECF 5-9, PgID.906-911.

"If the state court addresses the petitioner's federal claim in the course of resolving a different issue, the federal claim is deemed to have been adjudicated on the merits and entitled to § 2254(d)(1) deference." *See* Federal Habeas Manual § 3:14. In *Hodge v. Haeberlin*, 579 F.3d 627, 643 (6th Cir. 2009), the Sixth Circuit held when a state court declines to review a claim because it (or perhaps another state court) had already resolved on direct review a related issue necessary to resolving that claim, the AEDPA's deferential standard of review applies, even though "out of caution" the Sixth Circuit also reviews the issue *de novo*. *Id.*

Petitioner's claim that Detective Ferguson committed perjury and that there was newly discovered evidence that could impeach Detective Ferguson's testimony is related to the ineffective assistance of appellate counsel claim that he raised on his post-conviction motion.  Arguably, the rejection of this related claim by the state trial judge on post-conviction review constitutes an adjudication of petitioner's *Brady/Giglio* claim on the merits, although in the absence of an explicit adjudication of petitioner's *Brady/Giglio* claim by any Michigan court, *de novo* review of the claim would also appear to be the more valid approach.

21

It is unnecessary to determine which standard of review applies. Assuming that petitioner's newly discovered evidence claim was adjudicated on the merits by the state courts, the rejection of petitioner's *Brady/Giglio*/newly discovered evidence claim was contrary to, or an unreasonable application of, clearly established law and an unreasonable determination of the facts.

*Kelley v. Burton*, 377 F. Supp. 3d at 756–57.

As this Court indicated in its earlier opinion and order, it is unnecessary to determine whether petitioner's *Brady* claim is subject to the AEDPA's deferential standard of review or whether the Court should review the claim *de novo.* Even if petitioner's *Brady* was adjudicated on the merits by the state courts, the rejection of petitioner's claim was contrary to, or an unreasonable application of, clearly established law and an unreasonable determination of the facts. Petitioner is entitled to habeas relief, as the Court will discuss in greater detail as follows.

### 3. Procedural default issue.

Respondent contends that petitioner's *Brady* claim is procedurally defaulted, because the trial judge ruled that petitioner failed to show good cause and prejudice for not raising this claim on his direct appeal, as required by M.C.R. 6.508(D)(3).

22

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

Petitioner argues that his appellate counsel was ineffective for failing to raise his *Brady/Giglio* claim on his appeal of right.  If petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his fourth claim on his direct appeal in the state courts. *See Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir.  2010).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, the Court will address the merits of

petitioner's *Brady* claim. *See Cameron v. Birkett*, 348 F.Supp.2d 825, 836 (E.D. Mich. 2004).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).

In determining whether a claim of ineffective assistance satisfies the "cause" requirement of *Coleman*, a less stringent standard of review is

applied by a federal habeas court than when reviewing an independent freestanding ineffective assistance of counsel claim pursuant to the deferential standard of review found in 28 U.S.C. § 2254(d).  The question for the federal habeas court is not whether the state court's decision was unreasonable, but whether there was an independent Sixth Amendment violation under *Strickland*.  In other words, the level of scrutiny is the same as would be applied on direct review. *See Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006).  This Court concludes, as it did in its earlier opinion and order, that petitioner's *Brady/Giglio* claim was meritorious. Accordingly, appellate counsel was ineffective for failing to raise this claim on petitioner's appeal of right, so as to provide petitioner cause and prejudice for failing to raise his *Brady* claim on direct appeal. *See McFarland v. Yukins*, 356 F.3d 688, 712 (6th Cir. 2004).

### 4.  The *Brady* claim.

Petitioner argues that although his jury heard testimony from the informant and lab technician, the jury never heard evidence that Detective Ferguson committed perjury in another case, which would support petitioner's allegation that Ferguson provided false testimony at his trial. Ferguson's testimony regarding his relationship with the informant, Michael

Zion, is also questionable, which in turn would call into question the veracity of both of these witnesses. Petitioner argues that without Ferguson's testimony, charges could not have been filed in this case. Petitioner further argues that due to Ferguson's false representations, it is difficult to discern with confidence what was the truth and what was a lie. (Habeas Petition, ECF 1, PageID.40). Petitioner further argues that impeachment of the informant would also have undermined his convictions, being that Ferguson, Zion and the lab technician were the only witnesses called at trial.

To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a

26

*Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.   The rule in *Brady* "applies to evidence undermining witness credibility." *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016).   Evidence is "material when there is any reasonable likelihood it could have affected the judgment of the jury." *Id.* Thus, the test is not whether the jury would have acquitted had it known of the suppressed evidence; a Due Process violation occurs if the withheld "evidence is sufficient to undermine confidence in the verdict." *Id.* (citing *Smith v. Cain*, 565 U.S. 73 (2012)).   Under this standard, petitioner can prevail on his *Brady* claim violation even if "the undisclosed information may not have affected the jury's verdict." *Id.* at 1006, n. 6.

*Brady's* obligation to disclose applies to exculpatory evidence that is known only to the police, but withheld from the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *see also Youngblood v. West Virginia,* 547 U.S. 867, 869–70 (2006)(a *Brady* violation "occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor."); *Harris v. Lafler*, 553 F.3d 1028,

1033 (6th Cir. 2009)("*Brady* . . . applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not . . . and whether the accused asked for it or not."). "[B]ecause the police are just as much an arm of the state as the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009).

This Court believes that its rationale for originally granting petitioner habeas relief based on a violation of *Brady* is still valid:

> Detective Mark Ferguson was the key witness for the prosecution. He was the officer in charge of the investigation and sat at the prosecution's table throughout the trial. Although the prosecutor may not have known about Detective Ferguson's corruption, such knowledge can be imputed to the prosecution because Detective Ferguson was a part of the prosecution team.

> *Kelley v. Burton*, 377 F. Supp. 3d at 761.

This Court again believes that petitioner's case is almost identical to that of the petitioner in *Harris, supra*, where the Sixth Circuit granted habeas relief because the Michigan Court of Appeals, contrary to the Supreme Court's holdings, ruled that there was no *Brady* violation because

28

the prosecutors did not know about the explicit and implicit promises police made to the prosecution's star witness. *Harris*, 553 F.3d at 1033.   The Sixth Circuit held that the state's failure to provide these statements, which could have been used to impeach the witness, violated *Brady. Id.* The Sixth Circuit also held that the petitioner in *Harris* was prejudiced by the nondisclosure, because the impeachable witness "was the key witness for the prosecution." *Id*.

As this Court indicated in its prior opinion, other cases have concluded that it is a violation of *Brady* for a police officer to fail to disclose his or her own misconduct.

In *Arnold v. Secretary, Department of Corrections*, 595 F.3d 1324 (11th Cir. 2010), *adopting opinion of Arnold v. McNeil*, 622 F. Supp. 2d 1294 (M.D. Fla. 2009), *aff'd and adopted,* 595 F.3d 1324 (11th Cir. 2010), the United States Court of Appeals for the Eleventh Circuit held that crimes committed by a police detective who was a lead investigator and key witness against a criminal defendant, **although not known by the prosecutor until after the conclusion of the petitioner's trial, was material exculpatory information that the prosecution was obligated to disclose to the defendant under *Brady***.

In *United States v. McClellon*, 260 F. Supp. 3d 880, 883–88 (E.D. Mich. 2017), *appeal dismissed*, No. 17-1703, 2017 WL 4317149 (6th Cir. July 20, 2017), **Judge David M. Lawson of this district granted a new trial to a federal defendant based on a *Giglio* violation despite the fact that the prosecuting attorney was unaware of the police officer's misconduct.**   In that prosecution for being a felon in

29

possession of a firearm, a Detroit Police officer testified that he saw the defendant toss a gun during a pursuit. *Id.* at 882.  The day after this officer testified, the Detroit Police Department suspended the officer during the course of an investigation into claims that the officer falsified police reports in weapons cases. *Id.* The officer was subsequently criminally charged, but acquitted. This officer was not the only law-enforcement witness who testified to seeing the defendant with a gun. *Id.* at 883.  **Despite the fact that the government was unaware of the investigation, *Id.* at 884, Judge Lawson concluded that there was a violation of *Giglio* because the officer was aware of his own suspension from the police force and the pending investigation into his misconduct and that information undermining his credibility would damage the case. *Id.* at 885.**

Judge Arthur J. Tarnow of this district granted habeas relief on a similar claim, finding that **evidence that the officer in charge's corrupt activities, could be imputed to the prosecutor's office, under *Brady*, because the officer was a key part of the prosecution team who was in charge of the investigation and actually sat at the table with the prosecution at trial.** *See McGowan v. Christiansen*, 353 F. Supp. 3d 662 (E.D. Mich. 2018).  This Court finds it somewhat significant that the same Attorney General's Office which is currently opposing the current petition chose to voluntarily dismiss their appeal from Judge Tarnow's opinion and order granting relief in almost identical circumstances. *See McGowan v. Christiansen*, No. 19-1074, 2019 WL 1768921 (6th Cir. Mar. 11, 2019). (Emphasis added).

Petitioner's case is identical to the petitioner's case in *McGowan*.

Detective Ferguson was the officer in charge of the case and a key

member of the prosecution team.  Evidence that Detective Ferguson had

committed perjury in another case, and was under an investigation that

30

resulted in reexamination of 100 cases involving Ferguson and 16 of those later dismissed outright, could have been used to significantly impeach the detective's credibility.  The 16 cases dismissed outright were based solely on the testimony of Detective Ferguson.   In petitioner's case, the prosecutor did not dismiss the case due to Michael Zion's testimony.

Respondent contends that the testimony of the informant, Michael Zion was sufficient, without the testimony of Ferguson, to sustain the convictions. This Court had already found that the identification evidence needed to sustain the first drug buy was provided by Detective Ferguson and without his testimony, the conviction cannot stand.  In regards to the subsequent drug buys, the credibility of the informant, Michael Zion, is suspect.

Michael Zion was the only other witness called to testify as to the drug transactions. Although other officers were referenced by Ferguson, their existence and roles are questionable, as they were not called to testify at trial.

The credibility of Michael Zion and his motives for testifying are very suspect.  Testimony provided by Detective Mark Ferguson at trial, and his affidavit in support of the search warrant appear to be inconsistent as to

Zion's motive in testifying at petitioner's trial and his prior relationship with Detective Ferguson.   Ferguson's trial testimony portrays Zion as an individual who just happened to call Ferguson to see if he could get leniency on a retail fraud charge.   The prosecutor in closing argument portrayed Zion as an individual attempting to gain leniency on a retail fraud charge and went so far as to say to the jury, "Ask him if he'd do it again, he'd probably say no." ECF 5-4, PageID.396.

In comparison, the signed affidavit in support of Ferguson's search warrant describes his informant as having "purchased narcotics and dangerous drugs over 20 times.   As a result of the purchases made by the informant, five search warrants have been issued by judges of the 50th District Court." ECF 5-8, PageID.837-838. The prosecutor's comment and characterization of Zion's nervousness stemming from "he was working off a shoplifting charge and he got himself wrapped in prosecuting a mid-level drug dealer," (ECF 5-4, PageID.396) would not be consistent with the sworn affidavit in support of the search warrant which described the informant as having experience in 20 drug buys which resulted in 5 search warrants.

Furthermore, petitioner received a letter from Zion's ex-girlfriend. This is the same letter referenced in petitioner's motion for a new trial. ECF 5-5,PageID.429-431, 5-8, PageID.752 (letter). This letter suggests that Zion was a drug user with a long standing informant relationship with the police.

This Court finds that presentation of the additional evidence would be sufficient to undermine confidence in the verdict.  This Court further finds that due to the newly discovered evidence of Detective Mark Ferguson's perjury and firing from the Oakland County Sheriff's Department, and credibility issues in connection with the informant Michael Zion, that had the jury been presented with evidence that Detective Ferguson had been fired from the Sheriff's Department for committing perjury and that the Oakland County Prosecutor's Office had subsequently dismissed 16 cases in which Detective Ferguson was the officer in charge of the case, there is a reasonable probability of a different outcome to petitioner's trial.

Therefore, the Court grants the writ of habeas corpus and vacates the convictions.  The Court orders the State of Michigan to either (1) set a new trial date that is within ninety days of entry of this order, which is to be conducted in accordance with the conditions stated in this opinion, or (2)

release petitioner unconditionally. *See Mathis v. Berghuis*, 202 F.Supp.2d 715, 725 (E.D. Mich. 2002).

Because this Court's conclusion that petitioner is entitled to habeas relief on his fourth claim is dispositive of the petition, the Court considers it unnecessary to review petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger*, 374 F.Supp.2d 562, 567 (E.D. Mich. 2005); *see also Haynes v. Burke*, 115 F. Supp. 2d 813, 819-20 (E.D. Mich. 2000).

## IV. Conclusion

The Court, having reviewed the briefs filed by the parties, and, for the reasons set forth above,

IT IS ORDERED that Petitioner Marcus Mandelle Kelley's amended petition for a writ of habeas corpus (ECF No. 1, as amended in ECF No. 24) is CONDITIONALLY GRANTED.   UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN ONE HUNDRED AND EIGHTY (180) DAYS OF EITHER THE DATE OF THIS OPINION *OR* THE DATE WHEN ANY APPELLATE REVIEW BECOMES FINAL, WHICHEVER DATE IS LATER, RESPONDENT IS ORDERED TO RELEASE PETITIONER FROM CUSTODY FORTHWITH.

IT IS FURTHER ORDERED that this action is CLOSED on the Court's docket.

s/Denise Page Hood
Chief Judge, United States District

DATED: January 31, 2022